UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
ESTHER ONUOHA,

                         Plaintiff,

-*against*-

SHELTERING ARMS CHILDREN AND FAMILY
SERVICES, INC. and KAREN BROWN, *Individually
and In Her Official Capacity*,

                         Defendants.
-------------------------------------------------------------------X

Docket No.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, ESTHER ONUOHA, (hereinafter "Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants SHELTERING ARMS CHILDREN AND FAMILY SERVICES, INC. and KAREN BROWN, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et. seq*. ("Title VII"), the **New York State Human Rights Law**, (NYS Executive Law § 296, *et seq*.) ("NYSHRL") and the **New York City Human Rights Law**, New York City Administrative Code § 8-107, *et seq*. ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against and sexually harassed** on the basis of her sex/gender and then she was **retaliated against** by her employer for complaining of sexual harassment in the workplace.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

3. The Court has supplemental jurisdiction over all state and city law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a charge of discrimination upon which this Complaint is based on the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC on March 25, 2021, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

8. Prior to the commencement of this action, plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York on June 4, 2021, in accordance with N.Y.C. Admin. Code §8-502(c).

## PARTIES

9. At all relevant times herein, Plaintiff was and is a resident of the State of New York and was and is a "person" and an "employee" entitled to protection as defined by federal and state laws.

10. At all relevant times herein, Defendant SHELTERING ARMS CHILDREN AND FAMILY SERVICES, INC., **(hereinafter "SHELTERING ARMS")**, is a non-profit corporation formed under the laws of the State of New York that provides educational services to youths in low income communities.

11. At all relevant times herein, Defendant KAREN BROWN **(hereinafter "BROWN")** was and is an employee of Defendant SHELTERING ARMS; to wit, she is employed as a director at the Williamsburg Early Development Center located at 110 Taylor Street, Brooklyn, NY 11249.

12. At all relevant times herein, Defendant BROWN was Plaintiff's direct supervisor and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Defendant BROWN is being sued herein in her official and individual capacities.

13. Defendant SHELTERING ARMS and BROWN are collectively referred to as "Defendants."

## FACTUAL ALLEGATIONS

14. On or about May 29, 2018, Plaintiff began her employment with Defendants earning $17.43 per hour as a teacher in the borough of Brooklyn.

15. At all times, Plaintiff worked at Defendant SHELTERING ARMS' Williamsburg Early Development Center, 110 Taylor Street, Brooklyn, New York 11249.

16. At all times, Plaintiff was a satisfactory employee that performed her duties without any major performance issues.

17. In or around September 2018, Defendant KAREN BROWN, director, began making sexual advances towards Plaintiff. Defendant BROWN's sexual advances included flicking her tongue at Plaintiff in a sexual way, pressing her breasts against Plaintiff's body when she would hug Plaintiff, making gestures with her finger inside of Plaintiff's palm when she would shake her hand, and discussing vivid details about her sex life and sexual desires.

18. Plaintiff was also subjected to similar sexual advances by a female co-worker, Kim Good ("Good"). Kim Good would often flick her tongue at Plaintiff in a sexual manner and openly discuss her sex life and sexual desires.

19. Plaintiff always objected to Defendant BROWN and Good's sexual advances and would repeatedly explain that it made her feel particularly uncomfortable because she is a heterosexual woman.

20. Defendant BROWN ignored Plaintiff's rejections and continuously performed the same inappropriate behavior by flicking her tongue at Plaintiff and making inappropriate contact with Plaintiff's body.

21. Plaintiff felt powerless over the situation and it appeared open sexual expressions were the culture of the work environment. Moreover, Defendant BROWN was Plaintiff's boss and Plaintiff feared losing her job if she continued to reject Defendant BROWN's advances.

22. In or around January 2019, Octavia Garcia ("Garcia") was transferred to Plaintiff's classroom. At this time, Plaintiff was the head teacher and understood Garcia was hired as a classroom aide.

23. However, Plaintiff was surprised when Defendant BROWN advised her that Garcia would assume the role of head teacher and Plaintiff would become the aide. Plaintiff's pay rate was also correspondingly reduced.

24. Plaintiff attempted to explain to Defendant BROWN and Garcia that she was legally assigned as the head teacher, but they ignored Plaintiff.

25. Plaintiff then contacted Michael Figueroa ("Figueroa"), Director of Early Childhood Education Programs, to discuss her concerns. Mr. Figueroa met with Plaintiff, Defendant

BROWN and Garcia wherein he reversed Plaintiff's demotion and restored her to the position of head teacher.

26. Notwithstanding Figueroa's decision to side with Plaintiff and reverse Defendant BROWN's decision, Defendant BROWN continued to seek Plaintiff's demotion, telling Plaintiff that she had "engaged [herself] with the enemy" whenever she met with Figueroa.

27. Plaintiff intended to address Defendant BROWN's continued hostility towards her with Figueroa, but he left Defendant SHELTERING ARM's employ before she could do so.

28. In or around early 2019, a non-verbal child (the "Child") was placed in Plaintiff's care but Plaintiff was provided no further information about the child. When Plaintiff met the Child's mother (the "Parent"), Plaintiff politely suggested seeing a child specialist as she had experience working with special needs children from a previous job.

29. The next day, Plaintiff was called into the office wherein Defendant BROWN and Debbie Dinero, Family Worker, claimed that the Parent had made a complaint regarding Plaintiff's suggestion that the Child see a child specialist.

30. Appalled that the Parent might have been offended by her innocuous suggestion, Plaintiff approached the Parent to inquire as to how she was feeling. The Parent told Plaintiff that Defendant BROWN and Debbie Dinero were lying and they coerced her into writing a complaint.

31. In or around mid-2019, Nakisha "Fula" Taylor ("Taylor") was hired as the new classroom aide. At that time, Plaintiff was unaware of Taylor's full name as Taylor referred to herself and asked to be referred to as "Fula."

32. Plaintiff repeatedly requested that Taylor provide her with her full name and Taylor refused to provide it. Specifically, Plaintiff wanted her full name to document Taylor's physically

abusive behavior towards the students. Plaintiff attempted to ask Defendant BROWN for her full name but was dismissed.

33. Shortly thereafter, Taylor began to sexually harass Plaintiff by flicking her tongue at Plaintiff in a sexual manner, rubbing Plaintiff's butt, and exposing parts of her body to Plaintiff.

34. Plaintiff complained to Defendant BROWN on numerous occasions about Taylor's sexual harassment.

35. However, despite Plaintiff's multiple attempts to speak openly about the harassment she was being subjected to, she was undermined and interrupted by Defendant BROWN.

36. Plaintiff asked Defendant BROWN to speak to her with respect. Plaintiff told Defendant BROWN, "relate your grievances with me without talking to me like a child." In response, Defendant BROWN accosted Plaintiff and threatened her by saying, "If I speak to you like a child, what are you going to do? You better pack up your bag and leave."

37. In or around November 2019, at the company staff picnic, Plaintiff attempted to speak with Olu Atanda ("Atanda"), Vice President of Early Childhood and Afterschool Programs, about the sexual harassment to which she was continually subjected. On two to three prior occasions, Plaintiff had attempted to contact Atanda by phone, but he had not returned her calls. When Plaintiff finally spoke to him at the picnic, Atanda told Plaintiff to send him an email. However, Atanda left Defendant SHELTERING ARMS' employ before Plaintiff had an opportunity to send Atanda an email.

38. In or around January 2020, Plaintiff went to use the bathroom at the back of the library. When Plaintiff entered the bathroom, the door was open and the lights were off. After

closing the door, Good suddenly jumped out of the stall, pulling down her underwear and exposing herself to Plaintiff.

39. As soon as this occurred, Ana Sagan, Head Teacher, who was taking her lunch in the library, entered the bathroom and she, along with Good, started laughing at Plaintiff. Plaintiff was horrified and repeatedly told Good not to do that again.

40. Approximately three days after this incident, Plaintiff reported Good's appalling exposure of herself to Brown. Brown told Plaintiff that she would speak to Good about the incident. However, when Plaintiff informed Brown that she was also going to report the matter to Human Resources, Brown aggressively suggested to Plaintiff not to speak to Human Resources and to "let it go."

41. Concerned by Brown's response, Plaintiff did not speak with Human Resources at that time.

42. On February 4, 2020, Brown called Plaintiff into her office to sign her end of the year performance review. However, as Plaintiff examined the review, she noticed that it was completely rewritten since her last conversation with Brown about the review in January 2020. Due to these changes, Plaintiff refused to the sign the review.

43. On February 21, 2020, Plaintiff was directed to report for a meeting with Jacqueline Giraldo ("Giraldo"), Senior Employee Relations Manager and three other employees from Human Resources, purportedly to discuss Plaintiff's refusal to sign the review.

44. During the meeting, Plaintiff was asked what the "real problem" between her and Brown was. Plaintiff proceeded to explain the entire situation to them.

45. Following the meeting, Plaintiff was placed on investigatory leave and asked to provide a written statement setting forth her complaints.

46. In or around mid-March 2020, Plaintiff submitted a formal complaint of the discrimination and retaliation from which she suffered to Giraldo.

47. Instead of addressing Plaintiff's complaints, on March 31, 2020, Defendant SHELTERING ARMS terminated Plaintiff's employment.

48. Upon information and belief, Plaintiff was terminated in retaliation for her complaints regarding sexual harassment and discrimination.

49. As a direct result of the wrongful and oppressive actions of Defendants, Plaintiff was sexually harassed, subjected to unlawful gender discrimination/retaliation, humiliated and she experienced a hostile work environment permeated with unwanted sexual advances and adverse employment actions causing her embarrassment, discriminatory ridicule, and hostility.

50. As a result of Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary/pay, special damages, loss of employment, loss of employment opportunities, loss to benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

52. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

53. As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

## AS A *FIRST* CAUSE OF ACTION FOR DISCRIMINATION
## VIOLATIONS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
*(Against Defendant SHELTERING ARMS)*

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

55. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer to … discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin.

56. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*., by discriminating against Plaintiff because of her sex/gender.

57. Plaintiff was victimized and subjected to a hostile work environment and/or a workplace that was permeated with unwanted sexual advances, severe sexual harassment, inappropriate sexual comments, unsolicited sexual content, devious ploys, humiliation, ridicule, wrongful disciplines, abuse, retaliation, and adverse employment actions based solely on her sex/gender.

58. When Plaintiff complained, Plaintiff's work environment only became more hostile.

59. Where the harasser, Defendant BROWN, is the Director and holds a supervisory position and the harassment culminated in a tangible employment action, Defendant SHELTERING ARMS is strictly liable.

60. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, loss of employment, the loss of a salary/pay, special damages, loss of benefits, loss of fringe benefits and other compensation which such employment entails, and Plaintiff

has also suffered future pecuniary losses, emotional pain, inconvenience, wrongful exclusion, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

61. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

62. Plaintiff is entitled to the maximum amount allowed under this statute/law.

**AS A *SECOND* CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
***(Against Defendant SHELTERING ARMS)***

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

64. <u>Title VII of the Civil Rights Act of 1964</u>, *as amended*, <u>42 U.S.C</u>. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

65. Plaintiff was retaliated against by Defendants for engaging in protected activity.

66. Plaintiff complained about the sexual harassment she faced at the hands of Defendant BROWN and said complaints were ignored.

67. Instead, Plaintiff was further subjected to retaliation, a hostile working environment, adverse employment actions, and wrongful termination.

68. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, loss of employment, the loss of a salary/pay, special damages, loss of benefits, loss

of fringe benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, wrongful exclusion, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

69. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

70. Plaintiff is entitled to the maximum amount allowed under this statute/law.

### AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW
(*Against All Defendants*)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice for an employer or licensing agency, because of an individual's… sex, gender . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

73. Defendants engaged in unlawful employment practices by discriminating against Plaintiff because solely based on her gender and for allowing a work environment to exist wherein Plaintiff was subjected to a hostile work environment as a result of her sex/gender and for engaging in protected activity.

74. Plaintiff was the victim of severe and abusive sexual harassment, ongoing discrimination, verbal abuse, unwanted sexual advances, inappropriate sexual comments, repulsive sexual touching, unsolicited sexual content, devious ploys, humiliation, ridicule, wrongful disciplines, abuse, retaliation, and adverse employment actions based solely on her

sex/gender and other acts by Defendants, based solely on her sex/gender.

75. Because of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, special damages, loss of benefits, inconvenience and other compensation, which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, mental distress, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

76. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

77. Plaintiff is entitled to the maximum amount allowed under this statute/law.

## AS A *FOURTH* CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK STATE EXECUTIVE LAW
*(Against All Defendants)*

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

80. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

81. Following Plaintiff's complaints, Plaintiff was subjected to a hostile environment permeated with discriminatory ridicule, comments, insults, further sexual harassment, adverse employment actions, and other retaliatory behavior.

82. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, loss of employment, the loss of a salary/pay, special damages, loss of benefits, loss of fringe benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, wrongful exclusion, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

83. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

84. Plaintiff is entitled to the maximum amount allowed under this statute/law.

### AS A *FIFTH* CAUSE OF ACTION
### FOR *DISCRIMINATION & RETALIATION*
### UNDER NEW YORK STATE EXECUTIVE LAW - *AIDER AND ABETTOR LIABILITY*
### (Against Individual Defendant)

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

86. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

87. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A *SIXTH* CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. New York City Administrative Code §8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

90. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender (female).

### AS A *SEVENTH* CAUSE OF ACTION FOR RETALIATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Against All Defendants)*

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

93. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by retaliating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of the Defendants.

### AS AN *EIGHTH* CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Aider and Abettor Liability - Against Individual Defendant)*

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95. The New York City Administrative Code §8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

96. Individual Defendant BROWN engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## PUNITIVE DAMAGES

97. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

98. As such, punitive damages are appropriate as a result of Defendants' above-described conduct and Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

## JURY DEMAND

99. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by **Title VII of the Civil Rights Act of 1964**, the **New York State Human Rights Law**, and the **New York City Human Rights Law** in that Defendants discriminated against Plaintiff on the basis of her gender and retaliated against Plaintiff by subjecting Plaintiff to a hostile work environment for engaging in protected activity;

B. Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

15

C. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law claims;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
June 4, 2021

**PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC**

By: _____/s/_____
Marjorie Mesidor, Esq.
Joseph Myers, Esq.
*Attorneys for Plaintiff*
Phillips & Associates, PLLC
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248 - 7431
mmesidor@tpglaws.com
jmyers@tpglaws.com